G. Hermann Kinnicutt v. Commissioner.
Kinnicutt v. Commissioner
Docket No. 112045.
United States Tax Court
1943 Tax Ct. Memo LEXIS 88; 2 T.C.M. (CCH) 902; T.C.M. (RIA) 43449; October 9, 1943
*88 Charles C. Parlin, Esq., 63 Wall St., New York, N.Y., and John P. Ohl, Esq., for the petitioner. Carl A. Phillipps, Esq., for the respondent. STERNHAGEN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $4,025.90 in income tax for 1938, holding that an amount, part of a tax assessment against petitioner, paid by his partners in settlement of a controversy between them, was taxable income to petitioner. Findings of Fact The petitioner, a resident of New York City, filed his income tax return for 1938 on a cash basis in the Second District of New York. Prior to December 21, 1931, he was senior partner in the firm of Kissel, Kinnicutt & Co., the good will of which was owned 52 1/2 per cent by him and 42 1/2 per cent by Fuller. Edwin S. Webster, Jr., Albert H. Gordon and Chandler Hovey, were partners in the firm of Kidder, Peabody & Co., which had been formed in March, 1931, through acquisition of the name, assets and good will of a prior firm of the same name. The Kidder firm was obligated by a revolving credit agreement to pay bank creditors of the old firm $2,000,000 out of future earnings. December 21, 1931, the Kidder and Kissel firms were *89 merged, and the business was continued by Webster, Gordon, Hovey and Kinnicutt, under the firm name of Kidder, Peabody & Co. The agreement of merger provided: ARTICLE II. Section 2. In consideration of the transfer to Kidder of the good will and firm name of Kissel, to be transferred to Kidder pursuant to Article 1. Section 2(c), Kidder will credit to the capital account of G. Hermann Kinnicutt with Kidder, and pay to said G. Hermann Kinnicutt, the respective amounts specified in subparagraph (b) of paragraph 5 of Article Third of the Agreement of Partnership of Kidder, dated December 21, 1931 between Edwin S. Webster, Jr., Chandler Hovey, G. Hermann Kinnicutt and Albert H. Gordon, such payments and credits to be made at the times and in the manner therein specified. The agreement of partnership of the same date provided: ARTICLE THIRD 5(b). Of such net profit remaining after the credits under the preceding subparagraph of this paragraph 5, or of $250.000, whichever shall be lower, 30% shall be credited to the capital account of G. Hermann Kinnicutt and an additional 10% shall be paid to him; provided, however, that no such payment or credit shall be made to the extent that the *90 aggregate amount thereof plus the aggregate of all such previous payments and credits would exceed the sum of $500,000. Kinnicutt's share of the general partnership orofits was fixed at 25 per cent. The $2,000,000 revolving credit agreement was modified so as to subordinate the $2,000,000 obligation to the $500,000 to be paid to Kinnicutt under Article Third, paragraph 5(b) of the partnership agreement. The first and second payments under Article Third, paragraph 5(b) of the partnership agreement, were received by Kinnicutt from the Kidder firm in 1933 and 1934, respectively. The amount of the 1934 payment was $50,625.56, and Kinnicutt transferred 42 1/2 per cent to Fuller, his former partner in the Kissel firm. Kinnicutt and his partners, Webster, Gordon and Hovey, disagreed as to the tax character of the payments to Kinnicutt, the latter contending that the payments were for the purchase from himself and Fuller of the good will of the Kissel firm, and the other partners contending that they were distributions to petitioner of current partnership income. From each partner's return, part of the distributable net income of the partnership for 1933 and 1934 was omitted. Some of *91 the agents of the Bureau of Internal Revenue agreed with Kinnicutt's position and others agreed with that of the three partners. As to the payment received by Kinnicutt in 1933, the statute of limitations was allowed to run. An additional assessment for 1934 was proposed against Kinnicutt based on the inclusion in his 1934 income of the 1934 payment received by him from the partnership. The Commissioner proposed to include the disputed amounts for both 1933 and 1934 in the income of the partners for those years, proposing additional assessments against them as follows: A. H. Gordon
1933
$ 8,005.97
1934
2,121.71
C. Hovey
1933
26,933.80
1934
6,844.46
E. S. Webster, Jr
1933
22,186.21
1934
6,108.50
G. H. Kinnicutt
1934
2,215.96
$74,416.61 The existence of the disagreement among the partners was recognized in the Bureau. By 1938, when the controversy between the partners had become acrimonious and seriously disturbed the business harmony of the firm, the four partners on June 16, 1938, made a compromise agreement providing: It is agreed that an effort is to be made to settle the 1933 and 1934 tax cases involving the taxability of the Kidder Peabody income *92 as between the partners on the following basis. 1. That Kinnicutt will consent to an assessment against him for 1934 on the basis of including in his return (a) 57 1/2% of the clause "B" distribution or, if necessary, (b) 100% of the clause "B" distribution. 2. That the amount of the additional tax thus resulting (plus interest) shall be paid 50% by Kinnicutt and 50% by Webster, Hovey and Gordon. After a conference of representatives of the Bureau and attorneys for the four partners, the following proposal was submitted July 7, 1938, to the Commissioner: Re: Edwin S. Webster, Jr., Chandler Hovey, Albert H. Gordon and G. Hermann Kinnicutt. 1933-1934 Taxes. Referring to the recent conference in Washington, I am authorized to submit the following proposal, without prejudice, in full settlement of the income tax liability of the above named taxpayers for the years 1933 and 1934: (1) Mr. Kinnicutt will consent to an assessment against him for the year 1934 on the basis of (1) the adjustments shown in the revised report of the Revenue Agent which was mailed to him on November 8, 1937 and which shows an additional tax to be assessed of $2,215.96, and (ii) the inclusion of the payments *93 and credits to him under paragraph 5(b) of Article Third of the Kidder, Peabody & Co. Partnership Agreement. (2) Messrs. Webster, Hovey and Gordon will consent to assessments against them for the years 1933 and 1934 on the basis of (i) the exclusion of the payments and credits to Mr. Kinnicutt under said paragraph 5(b), and (ii) acceptance of all other adjustments shown in the reports dated March 16 and 17, 1936 and October 22, 1936, received by them from the Internal Revenue Agent in Charge at Boston. On the foregoing basis the taxpayers will respectively consent to assessments as follows: Deficiency
Name
For 1933
For 1934
Edwin S. Webster, Jr
$ 4,597.84
$ 316.16
Chandler Hovey
13,459.08
2,894.73
Albert H. Gordon
1,486.94
2.48
G. Hermann Kinnicutt
closed
16,106.49
The forgegoing proposal contemplates final closing at the same time of all the above cases for the years 1933 and 1934 not yet closed and may not be accepted in part only. Your prompt response will be appreciated. Kinnicutt, on August 25, 1938, executed a Waiver of Restrictions on Assessment, Form 870, sent to him by the Commissioner on August 19, 1938, in which he consented "to the assessment *94 and collection of the following deficiency * * * in tax: taxable year ended Dec. 31, 1934 income in the sum of $16,104.65." The proposal was accepted by the Commissioner, in a letter to Kinnicutt dated September 21, 1938, as follows: Reference is made to a conference held in this office on January 11, 1938, with your representative, Mr. Charles C. Parlin, 63 Wall Street, New York, New York, relative to your income tax liability for the taxable year ended December 31, 1934. At the conference a proposal of settlement was made by your representative upon the basis of a deficiency in income tax of $16,104.65, subject to your concurrence, and subject to acceptance by this office. Your representative's letter dated August 30, 1938, transmitting an executed agreement form 870 as evidence of your willingness to effect a settlement upon this basis, has been received. After careful consideration by this office the agreement has been accepted. The deficiency in tax, plus interest provided by law, therefore, will be assessed immediately. Upon receipt of notice and demand for payment from the collector of internal revenue for your district, remittance should be made to that official. A copy *95 of this letter has been mailed to your representative in accordance with the authority contained in a power of attorney on file in this office. The assessment of $16,104.65 with interest was then made and Webster, Hovey and Gordon, paid $8,419.78 thereof. Opinion STERNHAGEN, Judge: Because Webster, Hovey and Gordon, pursuant to their agreement with Kinnicutt of June 16, 1938, paid $8,419.78 of the $16,104.65 assessed against Kinnicutt after his Form 870 waiver of August 25, 1938, the Commissioner has increased Kinnicutt's 1938 income by the $8,419.78. The Commissioner relies upon the simple proposition derived from , that a taxpayer realizes income when pursuant to a contract his obligation is discharged by another for his benefit. The proposition, however, is not applicable, since the evidence does not indicate that the discharge by the partners was for Kinnicutt's benefit. The agreement between the partners was made in view of the fact that the Commissioner was about to make additional assessments against each of the four for 1933 and 1934. The proposed assessment against Kinnicutt at that time was $2,215.96, and *96 that against the others substantially larger, altogether aggregating $74,416.61. It was to dispose of these as to all the partners that the agreement of June 16, 1938, was made, not alone to dispose of the tax problem of Kinnicutt but also to dispose of those of the other three. As far as Kinnicutt was concerned, the proposed deficiency against him was only $2,215.96, and he could have cleared himself of liability by paying that amount. Instead he agreed to the assessment for a larger amount if the partners, against whom greater assessments were proposed, would pay half. This was an agreement between them to settle a dispute and did not embody any theoretical or rational grounds for the settlement. The partners were not among themselves concerned with the labels of the amounts as taxes. These were only important in their relations with the Government. There was no official determination by the Commissioner that Kinnicutt owed more than $2,215.96 for 1934, and no demand was made for more than that amount; hence the theory of the final agreed assessment of $16,104.65 is not clear. So far as this record shows (and both parties here are satisfied with it), it was merely part of an offer *97 of settlement of the gross deficiency of all four. In reality, the other three partners were not paying part of Kinnicutt's deficiency but were paying their agreed share of the $16,104.65 which he consented should be assessed against him both to end the tax difficulties and the intra-partnership controversy. If the three had paid the $8,419.78 to Kinnicutt directly as a performance of the June 21, 1938, agreement, it would be hard to see that the amount would be income to him. There would be as much ground for regarding it as a further payment for his capital contribution of the Kissel good will. For present purposes, it is only necessary to inquire whether the amount was a realization of income by Kinnicutt, and we think it was not. The fact that it took the form of a contribution by the three to Kinnicutt's consented deficiency is not, alone, enough to stamp it as a payment by another of the taxpayer's obligation. To apply the Douglas v. Willcuts doctrine, more must appear to indicate that the payment by the other is not only attributable to the taxpayer but is also under such circumstances as to constitute his income. Decision will be entered under Rule 50.